Randall GENDRON, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

Randall GENDRON, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

James P. GLASS, Petitioner–Appellant,

v.

Rodney J. AHITOW, Respondent–
Appellee.

Nos. 98–1233, 98–1291 and 98–1468.

United States Court of Appeals,
Seventh Circuit.

Submitted July 30, 1998.

Decided Aug. 20, 1998.

Randall J. Gendron (submitted on brief), for Petitioner–Appellant in Nos. 98–1233 & 98–1291.

Amanda A. Robertson, Office of the United States Attorney, for Respondent–Appellee in No. 98–1233.

Michael Carr, Office of the United States Attorney, for Respondent–Appellee in No. 98–1291.

James P. Glass (submitted on brief), for Petitioner–Appellant in No. 98–1468.

Deborah L. Ahlstrand, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Respondent–Appellee in No. 98–1468.

Before FLAUM, KANNE and EVANS, Circuit Judges.

PER CURIAM.

Prior to the Antiterrorism and Effective Death Penalty Act (AEDPA), a prisoner possessed virtually unlimited amounts of time to file a first petition for collateral review under 28 U.S.C. §§ 2254 and 2255. In an attempt to curb the protracted nature of such litigation, Congress established a one-year period of limitations. *See* 28 U.S.C. §§ 2244(d), 2255. We have consolidated for consideration and decision three appeals in order to clarify how district courts are to apply the new periods of limitation.

Randall Gendron's appeals, Nos. 98–1233 and 981291, arose from the following facts. On November 8, 1995, a jury in federal district court convicted Gendron of conspiracy to distribute and to possess with intent to distribute cocaine. Gendron's conviction and sentence were affirmed by this court on Oc-tober 8, 1996. On October 21, 1996, Gendron filed a petition for rehearing, which this court denied on October 25, 1996. Subsequently, on November 4, 1996, this court issued the mandate. Gendron never filed a petition for certiorari with the United States Supreme Court, and he waited until November 18, 1997, to file his § 2255 motion to vacate.

The district court determined "the date that the mandate is returned from the Court of Appeals is the latest possible date that the prisoner's conviction would become final." Accordingly, the district court used the November 4, 1996 date as the starting point for the one-year limitations period. Because Gendron's motion to vacate was not mailed until November 18, 1997, the district court concluded that the period of limitations had run; thus, the court denied the petition and dismissed the action with prejudice.

Gendron argues that even though he elected not to file a petition for certiorari with the Supreme Court, the district court should have excluded from the limitations period the 90 days he had to file such a petition. *See* Sup.Ct. R. 13. According to Gendron, the period of limitations should start to run, not from the date our mandate was issued, but on the date that review by the Supreme Court was precluded. *See* id. at 13.1, 13.3. Therefore, Gendron insists, he had until January 25, 1998, to file his § 2255 motion. *See* id. at 13.3. Because his motion was received by the district court on November 19, 1997, Gendron argues that his petition was timely filed.

In relevant part, the AEDPA amended § 2255 by adding the following language:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final; ...

We are left with the question of when a judgment is to be considered final. The Supreme Court has addressed the question of finality in the context of retroactivity. The Court defined a conviction as being final when "a judgment of conviction has been rendered, the availability of appeal exhaust-

ed, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (citing *United States v. Johnson,* 457 U.S. 537, 542 n. 8, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)). But, while the Court's definition can be used for guidance, Congress has the authority to independently determine the standards to be applied under §§ 2244 and 2255. *See Milwaukee v. Illinois,* 451 U.S. 304, 317, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) ("[W]e start with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law."). In this regard, it is helpful to compare the two periods of limitation contained in §§ 2244(d) and 2255.

As stated above, the period of limitations for § 2255 runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255. In comparison, the period of limitations for petitions filed under § 2254 begins to run from "the date on which the judgment became final by the conclusion of direct review *or the expiration of time for seeking such review*[.]" 28 U.S.C. § 2244(d)(1)(A) (emphasis added). Thus, in drafting § 2244, Congress explicitly included the time for seeking leave to appeal with a state supreme court even if the petitioner elected not to do so.[1] Such additional language is lacking in § 2255.

■■■ Where Congress includes particular language in one section of an act but omits it in another section of the same act, it is presumed that Congress intended to exclude the language, and the language will not be implied where it has been excluded. *See Hohn v. United States,* —— U.S. ——, ——, 118 S.Ct. 1969, 1977, 141 L.Ed.2d 242 (1998) (citations omitted); *McNutt v. The Board of Trustees of the Univ. of Ill.,* 141 F.3d 706, 709 (1998) (citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). In § 2244, Congress expressly included the period for seeking review whether or not a petitioner elected to avail himself of

the opportunity. Because similar language is absent in § 2255, we conclude that Congress intended to treat the period of limitations differently under the two sections. Accordingly, we hold that federal prisoners who decide not to seek certiorari with the Supreme Court will have the period of limitations begin to run on the date this court issues the mandate in their direct criminal appeal. Any other reading of the statutes would render the additional language in § 2244 meaningless, a result we must avoid. *See Hohn,* —— U.S. at ——, 118 S.Ct. at 1976 ("We are reluctant to adopt a construction making another statutory provision superfluous.") (citations omitted). The district court correctly dismissed Gendron's § 2255 motion as untimely, and we, therefore, decline to issue a certificate of appealability.

■■■ One additional matter raised by Gendron, in appeal No. 98–1291, is the district court's denial of his motion for reconsideration under Federal Rule of Civil Procedure 59(e). We review such a decision for abuse of discretion. *See Britton v. Swift Trans. Co.,* 127 F.3d 616, 618 (7th Cir.1997). A Rule 59(e) motion may only be granted if there has been a mistake of law or fact or if there is newly discovered evidence not previously available. *See Figgie Int'l, Inc. v. Miller,* 966 F.2d 1178, 1180 (7th Cir.1992). As the district court correctly applied the period of limitations, he did not abuse his discretion in denying Gendron's Rule 59(e) motion.

We turn now to the third consolidated case. In No. 98–1468, James Glass was convicted of three counts of aggravated sexual assault and one count of aggravated sexual abuse. Glass appealed to the Illinois Appellate Court, which affirmed his conviction and sentence on December 28, 1992. There is no indication that Glass ever sought leave to appeal his conviction to the Illinois Supreme Court. Thus, Glass's direct appeal ended on January 27, 1993, when his time to petition for leave to appeal to the Illinois Supreme Court expired.[2] *See* 28 U.S.C. § 2244(d)(1)(A); Il. St. S.Ct. R. 606(b).

---

**1.** We leave open the question of whether § 2244's "direct review" includes the time a state prisoner, who files for leave to appeal to a

state supreme court, is given to seek certiorari with the United States Supreme Court.

**2.** We reiterate that we do not address the question of whether a prisoner who filed for leave to

On August 18, 1994, approximately a year and a half later, Glass collaterally attacked his sentence and conviction through a properly filed post-conviction petition in the Illinois trial court. On September 20, 1994, his petition was denied. Glass appealed this determination, and on February 3, 1997, the Illinois Appellate Court affirmed the denial. Glass then filed for leave to appeal to the Illinois Supreme Court which was denied on June 4, 1997. On January 12, 1998, Glass filed his present habeas petition pursuant to § 2254.

Here too, the district court determined that Glass filed his petition after the period of limitations expired and dismissed the petition. In concluding that Glass had waited more than one year before filing his § 2254 habeas petition, the district court counted not only the 7–month period between the conclusion of his post-conviction proceedings [3] and the filing of his federal habeas petition, but also the 18–month period between the conclusion of Glass's direct review in 1993 and the filing of his state post-conviction proceedings in 1994. According to the district court, Glass had waited 25 months to file his § 2254 petition.

In *Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997), the Supreme Court concluded that Congress intend for most of the AEDPA provisions to apply only to cases filed after April 24, 1996. We agree with the Tenth Circuit that this holding extends to the period of limitations contained in § 2244. *See Hoggro v. Boone*, 150 F.3d 1223, 1224 (1998). Thus, for § 2254 petitions the period of limitations does not begin to run until April 24, 1996, the AEDPA's enactment date. *See id.* Consequently, the district court incorrectly counted the period between the conclusion of Glass's direct review in 1993 and the commencement of post-conviction proceedings in 1994. Because Glass had a properly filed postconviction petition when the AEDPA was enacted, his period of limitations tolled at least until June 4, 1997, when the Illinois Supreme Court denied leave to appeal.[4] Accordingly, Glass's § 2254 petition, filed on January 12, 1998, was timely. We grant Glass's request for a certificate of appealability and vacate the district court's dismissal of the petition. This case is remanded for consideration of the merits of Glass's petition.

In summary, in appeals Nos. 98–1233 and 98–1291, we find that Gendron did not make a substantial showing of the denial of a constitutional right and DENY his request for a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). In appeal No. 981468, we GRANT Glass's request for a certificate of appealability under 28 U.S.C. §§ 2253(c)(1)(A) & (c)(2), VACATE the dismissal of his habeas corpus petition, and REMAND the case for further proceedings.

---

appeal to the state supreme court would have the time for filing certiorari with the United States Supreme Court included in his "direct review" for the purposes of § 2244.

3. The district court correctly concluded that the period of limitations tolled while Glass's properly filed post-conviction proceedings were under consideration. *See* 28 U.S.C. § 2244(d)(2).

4. In his application for a certificate of appealability, Glass first raised to the district court the claim that he pursued a writ of certiorari with the United States Supreme Court following the denial of his state post-conviction petition, which he claimed was denied on October 1, 1997. Actually, it was denied on October 6, 1997. *See Glass v. Illinois*, —— U.S. ——, 118 S.Ct. 228, 139 L.Ed.2d 160 (1997). Whether we use June 4, 1997, or October 6, 1997, Glass's petition was timely.